Your Honor and the panel, Arnoldo Casillas, and if it may please the court, I wanted to present four brief points in my argument and with the court's permission I'd like to reserve seven minutes for rebuttal. Keep your eye on the clock. I will indeed, Your Honor. Now, Mr. Enriquez, the defendant in the underlying case, had the authority to control the conditions of Mr. McCormack's housing by reporting his observations of dangerous inmates. And it is our position, Your Honor, that the condition that was a threat, the condition that posed that danger to Mr. McCormack was in fact Mr. Rivera. Mr. Rivera, as admitted to by Mr. Enriquez, the checking deputy, was, as he described it, my characterization, acting outrageously. Unlike any of the other 190 inmates that were in that unit, Mr. Rivera stood out. So even if we agree with you that Mr. Rivera stood out to the deputies because of his outrageous conduct, is that enough to put a reasonable officer on notice that he poses a substantial risk of harm? It is, Your Honor, and the question is, was there a threat? And Mr. Enriquez painted a picture of what, again, we characterize as threatening conduct. Specifically, it appears that Mr. Rivera had it out for the deputies. He would wait at his door, and again, although they are kind of random, the cell checks occur hourly. He would wait for the deputies, and he would verbally assault them, and he would scream. And in fact, Mr. Enriquez testified that he didn't have to be at the cell door to know it was Mr. Enrique. But even if he had it out for the deputies, how would that show that he was a risk to your client? Because in addition to these frustrated, loud vocalizations, he would cuss at them. And, you know, F you and F this. Mr. Enriquez, when asked, well, what else did he say? Well, you know, he said, I don't remember. But what stood out was that Mr. Enriquez, in a frustrating tone or frustrated tone, was cussing and, again, verbally assaulting them. And, as Mr. Enriquez testified, he was also making these comments toward other inmates. Did Mr. Enriquez notice any acts of violence either towards the jailers or towards Mr. Rivera? No. And admittedly, Your Honor, there were no acts of violence. Our position, though, is that these verbal threats were tantamount to that, but specifically for this reason, Your Honor, because it was not for Mr. Enriquez to decide if that was a sufficient threat. That was something that was going to be left to the mental health professionals as well as- If Mr. Enriquez did not believe that it posed a substantial risk of harm, then, and in fact, in some ways, the way you're describing this kind of continuous, kind of regular outburst that Mr. Rivera exhibited makes it sound like it was something that they kind of got used to. This is what he was doing. He's kind of regularly screaming obscenities at the officers. And so, really, they didn't believe that he posed a substantial risk of harm, and that's why no further action was taken. I agree with Your Honor that Mr. Enriquez got used to it, for lack of a better phrasing of it. But what we do know is that he got used to outrageous conduct as distinguished from the regularly outrageous conduct that he had. The base level of the outrageous conduct in this mental health unit was pretty high. But, again, Mr. Rivera stood out and- Is there even evidence that Mr. Rivera had aggressive verbal threats toward McCormick? There are none. Mr. Rivera is institutionalized. Mr. McCormick is dead, and Mr. Enriquez had no recollection of that, Your Honor. And so, to answer the court directly, no. And also no evidence of prior physical altercations between Rivera and McCormick? Correct, Your Honor. Was there any evidence of prior physical altercations by Mr. Rivera towards anyone else? Does he have anything in his past criminal history that would indicate that he acts out violently that's part of the record? No, not that's part of the record, Your Honor. Now, Mr. Enriquez failed to comply with his obligations to report Mr. Rivera's openly aggressive conduct towards the deputies and other inmates. And our position, Your Honor, is that his failure to do so kept Mr. Rivera in that cell, kept that threat in the cell. And his obligation under these circumstances was to report it to the mental health staff, and again, as well as the jail staff that did the housing assignments, Your Honor. And our position is that had he done it within the last three checks that were conducted, one at eight, nine, and ten, Mr. Rivera would have been segregated away from Mr. McCormick, and this incident wouldn't have occurred, Your Honor. And I'll reserve the rest of my time for rebuttal. Thank you. Thank you. Thank you. Excuse me. Shannon Gustafson for Deputy Enriquez. In this situation, there was no failure to comply with any obligations because without there being a specific threat to McCormick, there was nothing to report. The evidence shows that Mr. Rivera was acting the way he acts in his baseline, that he yells out generally towards the tier. That's all that is in the record. That is not enough to move him. There has to be some type of specific threat to the cellmate. This is a jail setting. There are people that are upset with deputies. There are people that have mental health issues. But simply those issues alone don't mean that they cannot be housed with a particular cellmate. There is just no evidence of any material fact that Deputy Enriquez did not take reasonable measures in light of a high degree of risk in this case, or that the risk was obvious. Not even to Deputy Enriquez, but to any reasonable officer in that situation. The undisputed facts are that there was never any acts of violence with McCormick or Rivera. Neither one of them were ever violent towards staff, violent towards inmates, violent towards each other. They never complained about each other. They were both receiving regular mental health care from the mental health professionals. All that occurred in this case is Mr. Rivera yelled out of the cell towards the tier. Without some type of specific threat, there is just nothing here that there was a high degree of risk that would have been obvious to any objectively reasonable officer under these facts as the district court held. Even if there was some type of constitutional violation here, something that wasn't addressed in the briefing by appellant, there's still a qualified immunity defense available as well. Because there's not any cases, and it's plaintiff's burden to cite to a pre-incident case that would have put Deputy Enriquez on notice that the law was clearly established at this time. The prior case law all establishes that this failure to protect and this duty comes in when there is some type of specific threat. It seems like your argument is more factual than legal though, right? The law probably is clearly established that you have to protect from a threat. Your argument is just there is no evidence of a threat. There's no evidence of a specific threat here. What the argument has been is that there was some kind of general problem with Rivera, and I don't think that meets the threshold. A general he yells out, he argues does not meet that threshold. So the clearly established law is there has to be a specific threat, and there's just not anything in this record. And with that, I would submit unless the panel has any questions. The decision as to whether or not Mr. Rivera posed a threat of violence to Mr. McCormick was not a threshold question that was left to the public. Mr. Enriquez, his training, the procedures said that if you find somebody that is acting this way, do not pass code, do not collect $200, ship them out. Let the mental health professionals make that decision. He himself admitted I'm not a doctor. I don't get to make that decision. And the factual question is essentially that. Was there enough there for Deputy Enriquez to ship them out? And our position also is whether or not Mr. Rivera was a danger as determined by the mental health professionals, that segregation that night would have kept him out of his cell that night, and this incident wouldn't have occurred, Your Honor. And that's our fundamental position with respect to all of that. It is a factual question, and we believe that factually we're there, especially at this point where we're at the summary judgment level, Your Honor. And unless there are any questions, I'll stand submitted. Thank you, both sides, for the helpful arguments. This case is submitted.
judges: FRIEDLAND, DESAI, Schreier